[Civ. No. 661. Fifth Dist. Feb. 2, 1967.]

ROBERT EDWARD DEVEREAUX, Plaintiff and Respondent, v. FRAZIER MOUNTAIN PARK AND FISHERIES COMPANY, Defendant and Appellant.

324

Robert R. Mallicoat for Defendant and Appellant.

Robert L. Meadows for Plaintiff and Respondent.

STONE, J.—Plaintiff brought this action to quiet title to a 50- by 70-foot lot located in Frazier Mountain Park in the mountainous area of southern Kern County, near the Ventura County line. Plaintiff introduced in evidence a quitclaim deed from his grandmother, Agnes McBryant, conveying to him the property described as "All of Lot 6, Block 43, of Tract #1, Frazier Mountain Park as the same is shown upon the Official Map, dated 8/25/25, Book 3, Pages 125-129 of Maps in the office of the County Recorder in the County of Kern, State of California."

Record title to the property, however, stands in the name of defendant, and plaintiff was unable to produce a conveyance from defendant to his grandmother. Plaintiff relies largely for proof of a conveyance to his grantor upon three documents. The first is entitled "Frazier Mountain Park and Fisheries Co., Inc., Guarantee of Title No. 290," and recites that said corporation "does hereby certify that the official records of VENTURA County, California, will show that the fee simple title to the following described lots, tract or parcel of land, will be vested in AGNES MCBRYANT upon the recording of a certain deed issued to said AGNES McBRYANT by Frazier Mountain Park & Fisheries Co., Inc., and Dated November 2, 1927.

"This company hereby guarantees the title to said property to

be free and clear up to and including the date of the deed above mentioned and agrees to defend said title against any claims whatever asserted thereto.

"All of Lot 6, Block 43, of Tract No. 1, as the same is shown upon the official map thereof on record in Book 15 at pages 1 to 5 inclusive of Miscellaneous Records in the office of the County Recorder of said County." The Guarantee is dated November 2, 1927, signed by E. H. Patterson, Assistant Secretary, and bears the corporation's seal.

The second document is a letter on the stationery of Frazier Mountain Park and Fisheries Company, Inc., dated December 15, 1927, addressed to Agnes McBryant, reading:

"Dear Madam:

We are enclosing herewith your water stock certificate #265. Kindly let us have your signature on the enclosed slip, showing you received certificate and return to us as soon as possible.

Yours truly,

FRAZIER MOUNTAIN WATER CO.

By E. H. Patterson

Secretary."

The third document is Certificate No. 265 of Frazier Mountain Water Company, referred to in the foregoing letter of transmittal. The certificate of stock certifies that Agnes McBryant is the owner of two shares of the capital stock of Frazier Mountain Water Company and that the shares are "appurtenant to Lot 6, in Block 43, of Tract one, as per map of said Tract filed in the office of the County Recorder of Ventura County, State of California, being a subdivision of . . ." real property thereafter described, located partly in Ventura County and partly in Kern County.

Plaintiff testified that his grandmother handed him the Guarantee of Title, the water stock certificate and the letter of transmittal at the time she delivered the quitclaim deed to him in 1950; the first time he saw the Guarantee of Title it was in her possession in 1943, the water stock and letter of transmittal were first seen when delivered in 1950. Mrs. McBryant paid the taxes on the property from 1927 to 1950, and plaintiff paid them after 1950.

Defendant was incorporated August 27, 1924, for the purpose of engaging in the business of subdividing and selling

land in and around the area of Frazier Mountain Park, California. Its right to do business was suspended for nonpayment of franchise taxes a few years later and the corporation lay dormant until April 16, 1963, when a trusteeship was established under the supervision of the Superior Court for the County of Los Angeles. A trustee was appointed to revive and operate the corporation.

Counsel for defendant testified that the corporation's seal is missing, that most of the records of the corporation are missing, and that all of the last known officers and directors of the corporation are deceased. He testified that he had unearthed no information concerning the parcel of land in question or a conveyance to plaintiff's predecessor in interest, nor located any person with knowledge surrounding the early transactions of the corporation.

Defendant raises two questions: first, whether the secondary evidence presented by plaintiff supports the finding that plaintiff is the owner of the real property and, second, whether the three documents upon which plaintiff relies were admissible in evidence.

We consider the second point first, for if the evidence was improperly admitted the judgment must be reversed.

Since there is no deed of record from defendant to plaintiff's grantor, his grandmother, plaintiff offered proof of the execution and delivery of an unrecorded deed. ██ We note, parenthetically, that recordation is not a prerequisite to the validity of a deed if the rights of innocent third persons are not involved, as here. (Civ. Code, § 1217; *Warnock* v. *Harlow*, 96 Cal. 298 [31 P. 166, 31 Am.St.Rep. 209]; *Pomper* v. *Behnke*, 97 Cal.App.628, 638 [276 P. 122]; 15 Cal.Jur.2d, Deeds, § 96, p. 496.)

██ Defendant challenges the admissibility of the three documents, the Guarantee of Title, the letter of transmittal, and the certificate for two shares of capital stock of Frazier Mountain Water Company. Each document was over 30 years old at the time of trial. Code of Civil Procedure section 1963, which was then in effect, defines certain disputable presumptions, among them subdivision 34, providing: "That a document or writing more than 30 years old is genuine, when the same has been since generally acted upon as genuine, by persons having an interest in the question, and its custody has been satisfactorily explained."

Custody of the three documents was explained to the satis-

faction of the trial court by the uncontroverted evidence of plaintiff that his grandmother delivered the documents along with the deed to him in 1950, and that he had seen the Guarantee of Title in her possession as early as 1943. The only requirement as to custody is that the trial judge be satisfied, and if the evidence reasonably supports his decision in this respect, we are not privileged to say the documents should not have been admitted. ■ What a trial judge should look for in making this determination is given greater articulation in Evidence Code section 643, which superseded Code of Civil Procedure section 1963, subdivision 34. Evidence Code section 643 provides: ''A deed or will or other writing purporting to create, terminate or affect an interest in real or personal property is presumed to be authentic if it:

'' (a) Is at least 30 years old; (b) Is in such condition as to create no suspicion concerning its authenticity; (c) Was kept, or if found was found, in a place where such writing, if authentic, would be likely to be kept or found; and (d) Has been generally acted upon as authentic by persons having an interest in the matter.''

Testing the documents here by these criteria, we find that, (a), they are 30 years old; (b), nothing in the record casts doubt or suspicion upon the authenticity of the documents and the manner in which they came into plaintiff's hands; (c), the three documents were in the hands of one likely to have them if they were authentic, namely, Mrs. McBryant, whose name appears in both the Guarantee of Title and the stock certificate as the person holding the beneficial interest stemming from ownership of the real property involved. As to (d), we first quote from a Law Revision Commission comment which tells us that ''Section 643 restates and supersedes the presumption found in subdivision 34 of Code of Civil Procedure Section 1963. Although the statement of the ancient documents rule in Section 1963 requires the document to have been acted upon as if genuine before the presumption applies, some recent cases have not insisted upon this requirement. *Estate of Nidever*, 181 Cal.App.2d 367, 5 Cal.Rptr. 343 (1960) ; *Kirkpatrick* v. *Tapo Oil Co.*, 144 Cal.App.2d 404, 301 P.2d 274 (1956). The requirement that the document be acted upon as genuine is, in substance, a requirement of the possession of property by those persons who would be entitled to such possession under the document if it were genuine.''

■ In support of (d), plaintiff argues that since defend-

ant paid no taxes on the property after 1927, while Mrs. Mc-Bryant and he, as her successor in interest, paid real property taxes up to the date of trial, all parties concerned acted upon the deed mentioned in the Guarantee of Title and in the water stock certificate as genuine.

Apparently no one has been in possession of the lot, which is located on a hillside in a mountain resort area; the evidence is that it has remained vacant and unoccupied since 1927. This is not conclusive evidence that the parties did not recognize the conveyance of 1927, and does not render the documents inadmissible under Code of Civil Procedure section 1963, subdivision 34; it simply presents one question of fact among several considered by the trial court in determining whether to admit the documents in evidence.

■ We are satisfied the documents were qualified for admission upon another ground. Code of Civil Procedure section 1944 provided: "Evidence respecting the handwriting may also be given by a comparison, made by the witness or the jury, with writings admitted or treated as genuine by the party against whom the evidence is offered, or proved to be genuine to the satisfaction of the judge."

Plaintiff obtained from the Secretary of State of the State of California a certified copy of a document entitled "Certificate of Original Creation of Bonded Indebtedness of Frazier Mountain Park and Fisheries Company," signed by the president and a majority of the directors of the corporation, and by the secretary, E. H. Patterson. The signatures were acknowledged before a notary public and the document bears the corporation's seal. The signature of the secretary, E. H. Patterson, and the seal of the corporation correspond to the signature and the seal upon the Guarantee of Title and upon the Frazier Mountain Water Company stock certificate.

Defendant seems to take the position that a comparison of handwriting, here the signatures of E. H. Patterson, must be made by a witness, preferably a handwriting expert. Section 1944 does not impose such a restriction; it provides that a comparison may be made by a witness "or the jury." Certainly the trial judge is a trier of fact in the same sense as is the jury under the language of section 1944. In any event, the concluding clause reads, "or proved to be genuine to the satisfaction of the judge."

■ The certified copy of the Certificate of Original Creation of Bonded Indebtedness also qualified the three docu-

ments under Code of Civil Procedure section 1945, which provides that "Where a writing is more than thirty years old, the comparisons may be made with writings purporting to be genuine, and generally respected and acted upon as such, by persons having an interest in knowing the fact."

Certainly an official document certified by the Secretary of State qualifies as a writing purporting to be genuine, and it may be used to compare a signature thereon with a similar signature on another document 30 years old.

The four documents which the trial judge had before him are before us on this appeal. We cannot say the trial court erred in concluding that the signature, "E. H. Patterson," appearing on the Certificate of Original Creation of Bonded Indebtedness on file in the office of the Secretary of State, is the same signature as the "E. H. Patterson" appearing on the Guarantee of Title, the Certificate No. 265 for two shares of capital stock of Frazier Mountain Water Company, and the letter of transmittal.

This brings us to appellant's second point, that the evidence is insufficient to support the findings and the judgment. The principal contention is, of course, that there is no proof that defendant corporation delivered a deed to plaintiff's grantor, his grandmother, Agnes McBryant.

First of all, it is now settled that in California ancient documents may be received as proof of facts recited therein. (*Estate of Nidever*, 181 Cal.App.2d 367, 376 [5 Cal. Rptr. 343]; *Kirkpatrick* v. *Tapo Oil Co.*, 144 Cal.App.2d 404, 411 [301 P.2d 274]; *Ames* v. *Empire Star Mines Co., Ltd.*, 17 Cal.2d 213, 224 [110 P.2d 13].) Thus, the Guarantee of Title, which recites that defendant has issued a deed to the property to Mrs. McBryant, is sufficient to support the trial court's finding that title was vested in Agnes McBryant at the time she executed a deed to plaintiff.

Defendant contends the Guarantee of Title must be interpreted to mean that the deed is not to be valid until it is recorded. As we read the document it provides that a deed was issued on the date specified in the Guarantee of Title, namely, November 2, 1927, but that the guarantee does not become effective until the deed is recorded. In short, the company did not assume the burden of guaranteeing an unrecorded title, which is normal procedure in any guarantee of title. This condition limiting liability does not negate the statement

of fact in the Guarantee of Title that a deed was issued November 2, 1927.

The recital in the guarantee that defendant issued a deed to Mrs. McBryant on November 2, 1927, is bolstered by the letter of transmittal mailed a month and a half later to her by defendant corporation, forwarding certificate No. 265 for two shares of Frazier Mountain Water Company stock. The certificate reads, in part:

"THIS CERTIFIES that Agnes McBryant is the owner of two shares of the capital stock of FRAZIER MOUNTAIN WATER COMPANY . . . upon the following conditions, to wit:

"This Certificate is issued to the holder hereof and accepted by him on condition that the shares of stock represented hereby are attached to and made appurtenant to Lot 6, in Block 43, of Tract one, as per map of said Tract filed in the office of the County Recorder of Ventura County, State of California, being a subdivision of portions of that certain real property described as follows, to wit: . . ."

The stock certificate appurtenant to Lot 6, Block 43, of Tract one, is dated November 29, 1927, or 27 days after the deed referred to in the guarantee. It is signed by E. H. Patterson, secretary, as well as by the president of the corporation, and bears the corporation's seal. Thus the corporation, by its Guarantee of Title and the certificate of water stock, recognized in 1927 that Mrs. McBryant was the owner of the lot in question.

The only point in the case that causes us any misgivings relates to the county in which the property is located. The description in the deed from Mrs. McBryant to plaintiff shows the property is situated in Kern County. It is not disputed that on November 2, 1927, defendant owned "Lot 6, Block 43, of Tract #1, Frazier Mountain Park as the same is shown upon the Official Map, dated 8/25/25, Book 3, Pages 125-129 of Maps in the office of the County Recorder in the County of Kern." The Guarantee of Title and the certificate of water stock, however, show the property located in Ventura County. But the county in which the land is situated does not appear to us to be the critical issue; rather, the heart of the case lies in whether defendant, in fact, delivered a deed to Mrs. McBryant conveying Lot 6, Block 43 of Tract No. 1 of Frazier Mountain Park. If so, it is clear that defendant intended to convey to Mrs. McBryant the particular lot in the tract, whether it lay in Kern County or in Ventura County.

In short, in this action between the grantor and the successor in interest of the grantee, the county of location is secondary to the question of delivery of the deed. A different and more serious question would confront us were the rights of innocent third parties involved.

We are in agreement with the trial judge that the deed was delivered and that defendant intended to convey to Mrs. McBryant the particular lot without regard to whether it was, at that time, in Kern County or in Ventura County. So we pass to the secondary question of the county in which the lot conveyed by defendant to Mrs. McBryant is located.

Plaintiff testified that his grandmother told him there was an uncertainty as to the location of the Ventura-Kern County line in the area, which culminated in a dispute between the counties, and when the controversy was resolved it was determined that the lot she owned was in Kern County. Counsel for defendant argues with some force and eloquence that this is hearsay evidence, and that title to real property should not rest upon such attenuated proof.

Taking first things first, we note that hearsay evidence admitted without objection is sufficient to support a finding. (*Powers* v. *Board of Public Works* 216 Cal. 546, 552 [15 P.2d 156]; *Allen* v. *Los Angeles County Dist. Council of Carpenters*, 51 Cal.2d 805, 811 [337 P.2d 457].) Defendant's counsel elicited the hearsay in his cross-examination of plaintiff, who testified as follows:

"Q. Did your grandmother, Mrs. McBryant, ever say anything to you about some question about this deed, or with respect to her title? A. I don't think there was any doubt in her mind that it did not belong to her.

Q. I notice that in Plaintiff's Exhibit 3 and 4, the guarantee and the water company stock, that refers to the County of Ventura. A. Would you like me to elaborate on that.

Q. If you can tell me what the grandmother told you. A. Through her conversations, I know it to be a fact and the records will bear it out, in that at one time, on that particular tract, there was a dispute between Ventura County and Kern County and then the final decision was given that it was Kern County and that is why it had Ventura County on this.

Q. Have you checked the Ventura County records to see if it is recorded there? A. Yes.

Q. Is it there? A. No.

Q. Did your grandmother ever say anything to you about

the deed she had received for the property? A. No, not that I can recall.

Q. In regard to the action you mentioned a few minutes ago, did you have any personal knowledge of that, or any court trial—? A. I beg your pardon.

Q. Were you there at the court trial? A. No, I sure wasn't.

Q. Is this something that was told you? A. This is it, my grandmother told me and it was just a family conversation and whether that is the gospel truth, I don't know.''

The foregoing hearsay is not without support. The certificate for water stock issued to Mrs. McBryant by defendant reflects that the property to which the stock is appurtenant is located partly in Ventura County and partly in Kern County. Plaintiff testified that he searched the records of Ventura County and there is no Lot 6, Block 43, Tract No. 1, Frazier Mountain Park, of record in that county. Defense counsel never questioned plaintiff as to his experience in searching records, or whether he had the County Recorder of Ventura County do the searching for him. ▪▪▪ Thus, plaintiff's testimony stands uncontradicted and unquestioned. The trial judge accepted it and, since it is neither inherently improbable nor does it present a physical impossibility, we cannot say the trial court was not justified in accepting it as true. (*Lockheed Aircraft Corp.* v. *Industrial Acc. Com.*, 28 Cal.2d 756, 760 [172 P.2d 1]; *Daly* v. *Wallace*, 234 Cal.App.2d 689, 692 [44 Cal.Rptr. 642].) Additionally, the court's finding is supported by 13 tax receipts received in evidence, each reflecting that ''Lot 6, Block 43, Frazier Mountain Park No. 1'' was assessed as Kern County property by the County Assessor of the County of Kern, that the property was assessed to plaintiff herein, and that plaintiff paid the County Tax Collector of the County of Kern all taxes assessed against said property from July 1, 1952, up to the time of trial. In fact, the testimony was that all taxes assessed against Lot 6, Block 43, of Tract No. 1 of Frazier Mountain Park after November 2, 1927, were paid to the Kern County Tax Collector by either Agnes McBryant, plaintiff's predecessor in interest, or by plaintiff.

It could well be that the boundary dispute between the two counties is a matter so well known in Kern County that the trial judge recognized this fact without a second thought, but we have some doubt that a matter of this kind is within the rationale of judicial notice. The flat statement appears in *In re Ryan*, 61 Cal.App.2d 310, at page 314 [142 P.2d 769], that

"Courts may take judicial notice of geographical facts. (Sec. 1875 Code Civ. Proc.)," but each case we have researched in which this language appears, the court had more detailed facts from which to infer geographic location through common knowledge than here. Reference in testimony to a dispute between the county in which the case is being tried and a neighboring county may have alerted the court to a matter of record within the court's knowledge, but speculation cannot substitute for some indication in the record of what the trial judge took judicial knowledge.

There is other evidence, though somewhat tenuous, to support the finding that Lot 6, Block 43, Tract No. 1 of Frazier Mountain Park is located in Kern County, and that such property was deeded by defendant to Mrs. McBryant. Defendant, to prove plaintiff could not assert title under adverse possession, introduced a colored photograph of the lot to show there were no improvements thereon, and consequently adverse possession could not be asserted. Defendant qualified the photograph by the testimony of a resident of the locality who said it truly depicted the lot. However, the photograph shows a large area in addition to the lot; clearly visible are at least six different buildings, a valley, roads and hills. The picture is comparable to a view of the premises and from it the court could have oriented the lot within Kern County.

We are inclined to regard the argument that the photograph provides a basis for judicial knowledge of location as make-weight, at best. But when that evidence is added to the Guarantee of Title, the water stock certificate, the hearsay but valid testimony concerning the boundary dispute between Ventura and Kern Counties, testimony that there is no such property in Ventura County, the tax receipts showing the property was assessed as Kern County property and that taxes thereon have been paid to the County of Kern by plaintiff, we cannot say the trial court was not justified in determining from the combined weight of this evidence that the property is, in fact, located in Kern County, and was the property deeded to plaintiff's predecessor by defendant. Particularly is this true in view of defendant's failure to offer any evidence to negate hearsay testimony produced by plaintiff, to which defendant now so stridently objects.

Cases of this character, in which all persons having knowledge of the transaction surrounding a conveyance are dead

and all of the grantor's records are lost or destroyed, present grave difficulties to the trial court and equally vexing problems to a reviewing court because the determination rests so largely upon secondary evidence and inference. However, the motivating principle in both trial and appellate courts is expressed by the Supreme Court in *Mercantile Trust Co.* v. *All Persons,* 183 Cal. 369, at page 381 [191 P. 691], as follows: "Upon this whole subject we would say that in dealing with old instruments and muniments of title, the parties and witnesses to which are dead, and as to whose execution or the circumstances under which they were executed, or as to whose exact contents in case they or the original record of them is lost, certain and positive evidence is not possible, the same exactitude and certainty of proof cannot be required as is properly required in the case of more recent events. The courts must go upon probabilities and presumptions. To do otherwise would be to destroy valid titles, not to sustain them."

 We are well aware of the rule defendant cites, that a plaintiff in a quiet title action must prevail on the strength of his own title and not on the weakness of the defendant's title. But where, as here, the plaintiff makes a prima facie case that satisfies the trial judge it is not the weakness of defendant's evidence that tips the scales—it is defendant's failure to counter plaintiff's evidence, weak as it may be.

The judgment is affirmed.

Conley, P. J., and Gargano, J., concurred.